SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BRENDA MCCOY,

    Plaintiff,

v.                                       Civil Action No. 2:11-00927

NORFOLK SOUTHERN RAILWAY COMPANY and
NORFOLK SOUTHERN CORPORATION,

    Defendants.

MEMORANDUM OPINION AND ORDER

Pending is the motion of defendant Norfolk Southern Corporation to dismiss for lack of personal jurisdiction, filed April 16, 2012.

I.    Background

The claims at issue in this case arise from a troubled, two decade-long relationship between plaintiff's family and defendant Norfolk Southern Railway Company ("Norfolk Railway"). Plaintiff Brenda McCoy is a resident of Sprigg, Mingo County, West Virginia. Defendant Norfolk Railway is a Virginia corporation with its principal place of business in Norfolk, Virginia. Defendant Norfolk Southern Corporation is also a Virginia corporation with its principal place of business in Norfolk, Virginia, and is the parent company of Norfolk Railway (together, the "Norfolk defendants"). The facts of the

case as taken from the amended complaint, which are fully recounted in a previous opinion of the court, are incorporated by reference.  See McCoy v. Norfolk S. Ry. Co., No. 2:11-cv-0927, ___ F. Supp. 2d ___, 2012 WL 873352, at *1-5 (S.D. W. Va. Mar. 14, 2012).

The essential thrust of the action is as follows.  McCoy contends that she moved from her homestead along the Tug Fork River in September 1992 to a new parcel approximately a mile upstream to make way for the construction of a private coal truck bridge.  Prior to the property transaction, plaintiff and her now-deceased husband held several discussions with the then-track supervisor for Norfolk Railway regarding whether an abandoned railroad crossing would be reinstalled to allow direct access to the new parcel.  At that time, a Norfolk Railway official pledged to complete the proper paperwork for the reinstatement of the crossing.  It was never reinstalled, allegedly because of safety concerns.  Instead, Norfolk Railway has -- since 1992 -- provided plaintiff with access to her property by way of a gravel access road lying parallel to the railroad tracks.  Plaintiff alleges that the access road has suffered from various stages of hazardous disrepair over the years, though recently its condition has worsened substantially.  Consequently, plaintiff has lodged multiple complaints about the

condition of the road with agents of Norfolk Railway and various local and federal officials.

Plaintiff initiated this action against Norfolk Railway, Norfolk Southern Corporation, and Norfolk Railway track supervisor Jack Stepp in the Circuit Court of Mingo County, West Virginia, on October 20, 2011. She filed an amended complaint on October 25, 2011. The amended complaint sets forth seven counts. Counts I and II seek declaratory and injunctive relief with respect to an alleged easement by implication and an easement by necessity, respectively. Count III alleges breach of contract. Count IV, styled "nonfeasance, misfeasance, and malfeasance," appears to allege the violation a public duty. Count V alleges "Estoppel by Negligence" and Count VI alleges "Hazardous Negligence." Finally, Count VII alleges intentional infliction of mental and emotional distress.

By memorandum opinion and order dated March 14, 2012, the court denied plaintiff's motion to remand and motion for leave to amend. See McCoy, 2012 WL 873352. Nondiverse defendant Jack Stepp was dismissed as fraudulently joined and defendant Norfolk Southern Corporation's motion to dismiss or quash was granted to the extent that plaintiff's service upon Norfolk Southern Corporation was quashed. Id. Plaintiff was given 30 days from the date of the order to properly serve

Norfolk Southern Corporation.  Id.  Norfolk Southern Corporation now moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

II.  Motion to Dismiss for Lack of Personal Jurisdiction

A.  Governing Standard

Personal jurisdiction differs from subject-matter jurisdiction.  It is designed to protect an individual liberty interest rather than an institutional interest.  J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2789 (2011) (plurality); Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005); Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("The requirement that a court have personal jurisdiction . . . represents a restriction on judicial power . . . as a matter of individual liberty.").

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction involves both procedural and substantive components.  On the procedural side, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence.  Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.

1989). "But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." New Wellington Financial Corp. v. Flagship Resort Development Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citations omitted); Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004); Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

Importantly, "'[a] threshold prima facie finding . . . [of] personal jurisdiction . . . does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" New Wellington, 416 F.3d at 294 n.5 (quoting Prod. Group Int'l v. Goldman, 337 F. Supp.2d 788, 793 n. 2 (E.D. Va. 2004) (citation omitted)).

Respecting the substantive component, the nonmovant is

5

faced with two hurdles.  First, she must identify, and bring the nonresident within, the terms of an applicable state long-arm statute.  Second, the nonmovant must show that the exercise of personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment.  See <u>Consulting Engineers Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 277 (4th Cir. 2009); <u>Mitrano</u>, 377 F.3d at 407; <u>English & Smith v. Metzger</u>, 901 F.2d 36, 38 (4th Cir. 1990).  Inasmuch as our court of appeals has held that the West Virginia long-arm statute is coextensive with the proper reach of due process, <u>In re Celotex Corp.</u>, 124 F.3d 619, 627 (4th Cir. 1997), the two-part inquiry merges into one, namely, whether the exercise of personal jurisdiction over the nonresident defendant will comport with due process.

The due process requirement is satisfied if the defendant has "minimum contacts" with the forum.  These contacts must be of a quality and quantum that requiring the nonresident party to defend its interests within the state would "not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct. 2846, 2848 (2011); <u>Mitrano</u>, 377 F.3d at 407; <u>Carefirst</u>, 334 F.3d at 396.

In sum, "[a] defendant should be able to anticipate

being sued in a court that can exercise personal jurisdiction over him; thus, to justify an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" Mitrano, 377 F.3d at 407 (citing ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)); ePlus, 313 F.3d at 176. Put another way, "there must 'be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 213 (4th Cir. 2002) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985).

The standard for determining whether a court may exercise personal jurisdiction over a nonresident defendant depends on whether that defendant's contacts with the forum state provide the basis for the suit. See Mitrano, 377 F.3d at 406-07; Carefirst, 334 F.3d at 397. If so, the court applies the standard for specific jurisdiction, as more fully discussed in the recent Goodyear decision:

> First, the Court recognized that jurisdiction could be asserted where the corporation's in-state activity is "continuous and systematic" and gave rise to the episode-in-suit. It also observed that the commission

7

> of "single or occasional acts" in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections. These two categories compose what is now known as "specific jurisdiction."

Goodyear, 131 S. Ct. at 2848-49 (citations omitted).

If the specific contacts do not provide the basis for the suit, the International Shoe standard may still be satisfied in terms of the second basis for the exercise of judicial power, namely, general jurisdiction, explained more fully in the recent plurality opinion in J. McIntyre:

> A person may submit to a State's authority in a number of ways. There is, of course, explicit consent. Presence within a State at the time suit commences through service of process is another example. Citizenship or domicile -- or, by analogy, incorporation or principal place of business for corporations -- also indicates general submission to a State's powers. Each of these examples reveals circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State. These examples support exercise of the general jurisdiction of the State's courts and allow the State to resolve both matters that originate within the State and those based on activities and events elsewhere. By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.

J. McIntyre, 131 S. Ct. at 2787 (citations omitted).

While the standards governing general jurisdiction are essentially confined to the foregoing excerpt, the requirements

for specific jurisdiction require coverage in greater depth. In determining whether specific jurisdiction exists, the court considers (1) the extent to which the defendant has purposefully availed himself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. Mitrano, 377 F.3d at 407; Carefirst, 334 F.3d at 397; ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (alteration & internal quotation marks omitted).

As to the reasonableness inquiry, "courts 'must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief' when determining whether the exercise of jurisdiction is reasonable in any given case." Base Metal Trading, 283 F.3d at 213-14 (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987)).

In making its determination, the court does not simply engage in idle "contact counting":

> We should not "merely . . . count the contacts and quantitatively compare this case to other preceding cases." Id. Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of "fair play and substantial justice" is not thereby offended. Id. (citing Burger King Corp.

9

v. Rudzewicz, 471 U.S. 462, 477-78 (1985)); see McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223-24 (1957).

Carefirst, 334 F.3d at 397.

At all points, the touchstone of the inquiry remains the defendant's contacts with the forum. See ESAB, 126 F.3d at 626 (stating "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld.") (quoted in New Haven Advocate, 315 F.3d at 262)).

B.   Norfolk Southern Corporation

Defendant disputes the court's jurisdiction over Norfolk Southern Corporation on the grounds that its subsidiary Norfolk Railway is not the alter ego of Norfolk Southern Corporation such that the court should impute the subsidiary's West Virginia contacts to its parent. See Norfolk S. Ry. Co. v. Maynard, 437 S.E.2d 277, 281-82 (W. Va. 1993); Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433-34 (4th Cir. 2011). Plaintiff responds that the court's exercise of jurisdiction over Norfolk Southern Corporation is proper not on the basis of the alter ego theory, but rather

because the parent maintained control over certain real property at issue in this case, which is owned by Norfolk Railway and situated in West Virginia.  Thus, the court looks to the nature of the control Norfolk Southern Corporation exercised over the disputed property to ascertain if its contacts were of a quality and quantum that requiring Norfolk Southern Corporation to defend its interests within the state would "not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co.</u>, 326 U.S. at 316 (internal quotation marks omitted).

As defendant points out -- and plaintiff concedes -- Norfolk Southern Corporation has never had a formal interest in the property at issue in this case.  Plaintiff instead relies on evidence indicating that at relevant times, West Virginia-based officials of Norfolk Southern Corporation contributed to the circumstances that form the basis of plaintiff's claims, namely, by denying her repeated requests for a railroad crossing.

Plaintiff chiefly relies on a series of letters as proof of Norfolk Southern Corporation's contacts with the forum. Involved in the discussions over restoring the defunct crossing was Mr. T.L. Ingram, superintendent for Norfolk Southern Corporation in Bluefield, West Virginia.  (<u>See</u> Pl.'s Exs. B-D). The ongoing written correspondence also involved an individual

11

appearing to be Ingram's successor as superintendent for Norfolk Southern Corporation in Bluefield, Mr. D.M. Kimbrough. (Pl.'s Ex. J, Letter to Mr. McCoy from Kimbrough, dated October 27, 1993). Notably, plaintiff's request to restore the crossing was ultimately denied by Kimbrough in a letter dated December 28, 1993. (Pl.'s Ex. L, Letter to Mr. and Mrs. McCoy from Kimbrough, dated December 28, 1993). As with the correspondence from Ingram, Kimbrough's letters to plaintiff contained the letterhead of Norfolk Southern Corporation, which identifies Norfolk Southern Corporation as being located at 800 Princeton Avenue, Bluefield, West Virginia 24701. Plaintiff also points out that when she complained to Representative Nick Joe Rahall of West Virginia's Third Congressional District, the congressman's subsequent correspondence directed to Norfolk Railway was answered by Superintendent Kimbrough of Norfolk Southern Corporation. (Pl.'s Ex. O, Letter to Congressman Rahall from Kimbrough, dated February 9, 1994). Defendant did not file a reply in response to these specific contentions.

McCoy does not specify whether the type of personal jurisdiction over Norfolk Southern Corporation is specific or general in nature. Although it appears that Norfolk Southern Corporation may have had a physical presence in Bluefield, West Virginia, at the time Superintendent Kimbrough denied the

McCoys' request, the record is insufficiently developed to indicate whether the court has personal jurisdiction of either variety over Norfolk Southern Corporation. In view of this uncertainty, the better course is to hold defendant's motion in abeyance for a 60-day period of jurisdictional discovery, at the end of which plaintiff may file a response to defendant's motion with proof of Norfolk Southern Corporation's contacts with the forum in accordance with the principles of personal jurisdiction expounded above in Part II.A.

### III. Conclusion

Accordingly, it is ORDERED that defendant Norfolk Southern Corporation's motion be, and it hereby is, held in abeyance for a 60-day period of jurisdictional discovery ending August 15, 2012. It is further ORDERED that plaintiff, bearing the burden of proof, shall then file a supplemental response to defendant's motion to dismiss for lack of personal jurisdiction on or before September 4, 2012, and defendant shall file a reply on or before September 11, 2012.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

                                  Enter: June 14, 2012

                                  John T. Copenhaver, Jr.
                                  United States District Judge